AYRES, Judge.
This is a contest between a father and mother for the custody of Will Terrin Porter, a minor son of their marriage, born on November 11, 1969, but subsequent to its dissolution by divorce on May 16, 1969.
The judgment dissolving their marriage, an Arkansas decree, obtained at the instance of plaintiff, contained no provision concerning the custody of the child. Following the divorce, plaintiff, on November 13, 1970, married a second time and then to Alma Porter, with whom he presently resides in West Monroe. The defendant has remarried twice since the divorce, first to Ricky Jackson and then to Andrew Kra-masz, with whom she presently resides in Bastrop, Louisiana.
The trial court, in a written opinion following the trial, expressed serious concern as to the child’s welfare in the care and custody of either parent. However, the court stated:
“. . . when faced with the comparative circumstances presented by this evidence, the Court cannot be convinced that transfer of custody to plaintiff would be in the child’s best interests. Plaintiff has simply failed to establish, by clear preponderance of evidence, that custody of the four-year-old child should be removed from its mother and placed with him.”
From a judgment accordingly awarding custody of the child to and in the continuing care of the defendant, his mother, the plaintiff, his father, appealed.
Judge Farr of the trial court had the matter of the custody of the child before *861 him on two occasions: first, on a rule for custody instituted by the mother and, second, on the trial of the custody proceeding on its merits. On both occasions, the court assigned written reasons for awarding custody to the mother. The first assignment was on the overruling of a motion for a new trial. In overruling the aforesaid motion, the court stated:
“In this motion and in argument, counsel for plaintiff (defendant in rule) has misunderstood and misinterpreted the Court’s oral comments in making the rule absolute, as well as vigorously disagreeing with the result. The Court did not hold, as contended, that the factual issues relating to the mother’s recent conduct actually depended upon choosing between the testimony of the mother and that of Shirley Johns. The Court merely inquired of counsel during argument if he would agree to that proposition and listened and considered his contentions as to why he could not so agree (it might be observed here that counsel at first misunderstood the Court to be referring to the maternal grandmother rather than the mother). The Court did not, as its oral comments clearly reveal, limit its decision to the issue of the mother’s moral fitness, but rather considered the whole evidence in balancing the circumstances of each parent in terms of the child’s welfare.
“In fact, there were portions of the testimony of nearly all witnesses, including both plaintiff and defendant, the maternal grandmother, Mrs. Johns, Bobby Cheek and others which the Court found either doubtful, incomplete, suspicious, evasive, assumptive, argumentative or otherwise unconvincing. As in nearly all cases of this type, most witnesses had some obvious relationship to one party or the other, or some other obvious interest, which might well, and frequently did, color his or her testimony. The Court expressed concern about some obvious shortcomings of the child’s situation with its mother and about the mother’s past conduct and attitude. However, it was equally concerned about the facts that the father for more than two years refused to acknowledge or visit the child, furnished support only in obedience of a criminal court order, admitted .drinking rather heavily in the past, had been separated from his present wife for a rather extended period, obtained present custody by means of debatable propriety, maintained a home in which both parents work while his child and an older stepchild are in the custody of unrelated sitters during the day, and had actually lived with his son only briefly with little evidence from which the Court might evaluate permanent circumstances.
“In balancing these conflicting and unsatisfactory factors, the Court also weighed the total evidence relating to the mother’s moral conduct in the light of the credibility considerations previously mentioned. In so doing, despite counsel’s earnest contentions that only the father’s witnesses were telling the truth and that no one could possibly believe the mother, the Court did believe some of each witness’ testimony, discredited other parts of virtually all testimony and simply could not draw firm and sound conclusions from the remainder. For example, when Mrs. Johns admitted that she herself had been divorced on the ground of adultery, represented herself as being present with the child’s mother on numerous and repeated occasions when the latter allegedly engaged in alcoholic and sexual binges and yet continued her relationship with such a person, but at the same time denied that she engaged in similar conduct herself, and particularly when she is the sister of the father and admitted having said she intended to do what she could to help her brother obtain custody, much doubt as to her credibility was presented.
“In sum, the Court held originally, and still holds, that the total evidence did not, with preponderance, permit the Court to conclude with reasonable cer *862 tainty that the mother is presently unfit or that the best interests and welfare of the child clearly require him to be in his father’s home. Accordingly, the Court was left with the legal preference of the mother and awarded custody to her pending full trial and decision on the merits.”
In the assigment of reasons for judgment after trial of this cause on its merits, the court stated:
“Plaintiff obtained a divorce from defendant in Arkansas on May 16, 1969. On November 11, 1969, defendant gave birth to Will Terrin Porter, whose custody is the subject of this suit. Plaintiff orally denied paternity of the child and declined to support it. In March, 1970, he was found guilty of criminal neglect of the child and, in a probationary sentence, was ordered to pay $10.00 per week toward its support. On one occasion during the two-year probationary period, he was arrested for failure to make payments as required. Upon termination of the probation period, plaintiff ceased support payments.
“Sometime in early 1973, plaintiff began visiting the child and was allowed to take it to his home on occasions for overnight or weekend stays. (Plaintiff, who had remarried and had a stepdaughter, explains the long delayed interest as resulting from his realization that Will resembled him and must be his child. Defendant in argument suggests that this interest in Will flowered when plaintiff learned that his present wife could no longer bear children.) On one such occasion in early June, 1973, plaintiff refused to return the child to defendant and, on June S, filed this suit, seeking custody of the child, alleging defendant’s unfitness. An ex parte order, granting temporary custody to plaintiff was signed on the latter date; and on June 11, defendant filed a rule to set aside the ex parte order and to obtain temporary custody pending trial on the merits. That rule was tried on June 18; the ex parte order was recalled; defendant was granted temporary custody pending trial on the merits; a motion for new trial was filed on June 21, argued and overruled on July 2, 1973.
“The dispute was enlivened when, on August 2, plaintiff filed a rule to fix visitation rights during the pendency of the suit. However, this matter was resolved by agreement; and, after defendant gave birth to a child of her present marriage, the merits were finally heard on November IS, 1973. Pursuant to pretrial order, the evidence adduced at the June 18 hearing was not repeated but was made a part of the trial by reference and incorporation. Additional evidence of events and circumstances, both before and after the June 18 hearing, was offered by plaintiff. Defendant offered no additional evidence, relying upon her own testimony while under cross-examination by plaintiff’s counsel and upon cross-examination of plaintiff’s witnesses.
“The testimony presented at both hearings continues to impress the Court as expressed in its ruling on the earlier motion for new trial — portions of all of it are ‘either doubtful, incomplete, suspicious, evasive, assumptive, argumentative or otherwise unconvincing.’ Every single witness revealed a relationship to one or other of the parties, or a partisan or self-serving interest in the outcome, or a highly questionable code of morals and ethics. To filter from such evidence a sound and convincing conclusion of ultimate fact giving a full picture of the circumstances of each parent and each home is simply impossible.
“The Court continues to be gravely troubled about several matters related to the child’s welfare with defendant. She is unquestionably unsettled to a degree, frequently changing residences. She is in her third marriage, with the second and third having apparently been contracted with debatable judgment. She has at least rather callously or thoughtlessly placed herself in compromising situations during the eighteen months prior to the June hearing and *863 may in fact have been guilty of illicit sexual activities. (The evidence is conflicting concerning the specific events plaintiff sought to prove. Those not directly contradicted by defendant’s testimony and other circumstances were related by persons whose relationships and/or character render them subject to suspicion.) Her present husband is of doubtful stability and at the present time is serving a default sentence for driving while intoxicated. The child apparently spends a good portion of its life with its maternal grandparents in Richland Parish, as well as being moved around with defendant. Finally, defendant now expresses her intention to live in Arkansas where her husband allegedly has employment; and the interstate situation unquestionably portends difficulty in visitation and other relationships between the parties.
“Contrasted with this disturbing picture is one equally disturbing and uncertain on plaintiff’s side. Not only did he. deny this child for about two-thirds of its life and refuse to support it, but virtually all of his recent relationships with the child have been under the cloud of the venomous dispute between the parents and the families and friends of both. Plaintiff has had domestic problems during his current marriage, with one period of separation; and his conduct and that of his family and friends in connection with the custody dispute cause the Court to have serious concern over his true motivation. (It is difficult to accept at face value plaintiff’s expressed concern for the child’s welfare in view of his past attitude and his approach to this suit. Not only is there evidence of threats toward witnesses, but the whole approach appears to have been designed more to discredit defendant than to convince the Court of the advantages his home can offer the child. While defendant’s character is certainly a material issue, the law is equally concerned with positive evidence.) In addition, both he and his wife are employed ; and if custody were granted to him, the child would spend a major portion of its time with unrelated sitters. From all these circumstances, it is difficult if not impossible for the Court to discern how well the child’s interests (as distinguished from plaintiff’s) will be served in his home.
“In short, the Court is sufficiently disturbed about the child’s present environment and rearing that, in different circumstances, it would be removed from its mother’s custody — at least until her situation becomes more stable. However, when faced with the comparative circumstances presented by this evidence, the Court cannot be convinced that transfer or custody to plaintiff would be in the child’s best interests. Plaintiff has simply failed to establish, by clear preponderance of evidence, that custody of the four-year-old child should be removed from its mother and placed with him.
“Although not clearly presented in the basic pleadings, plaintiff did file a rule concerning visitation rights, and the evidence indicates the necessity to fix specific privileges if these parties are to develop responsible attitudes toward the child. Accordingly, the Court will recognize the right of plaintiff to have the child visit with him from 6:00 p. m. on Friday through 5:00 p. m. on Sunday beginning on the first and third Fridays of each calendar month, together with other visitation privileges on special holidays and/or birthdays and otherwise at reasonable times and intervals pursuant to prior arrangements between the parties. There being no prayer for or evidence relating to child support, defendant’s rights thereto will be reserved without finding or other comment.
“Upon presentation, the Court will sign formal judgment rejecting plaintiff’s demands and dismissing his suit at his -cost, awarding permanent custody to defendant and fixing plaintiff’s visitation rights as set forth herein.”
From our own review of the record, we find no abuse of discretion in the award of the custody of the minor to its mother; *864 nor do we find any manifest error in this respect.
The judgment appealed is accordingly affirmed at plaintiff-appellant’s costs.
Affirmed.